IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PAMELA S. BOSSLET, *

    Plaintiff, *

v. * Civil No. TJS-12-2392

WAL-MART STORES, INC., *

    Defendant. *

* * * * * *

**MEMORANDUM OPINION**

This matter is before the Court on Defendant Wal-Mart Stores, Inc.'s ("Wal-Mart") Motion for Summary Judgment (ECF No. 21).[1] The matter has been fully briefed,[2] and no hearing is necessary. *See* Loc. R. 105.6. For the reasons set forth below, Defendant's Motion for Summary Judgment is GRANTED. This Memorandum Opinion resolves ECF No. 21.

**I. INTRODUCTION**

    **A. Factual Background**

On December 17, 2008, Plaintiff Pamela Bosslet ("Ms. Bosslet") went shopping at the Wal-Mart store located in Westminster, Maryland. (ECF No. 24 at 1). She shopped for about one hour, during which time she used one of the shopping carts Wal-Mart provides for its customers' use. (ECF No. 21-1 at 2). Aside from the shopping cart's "wobbly wheels," Ms. Bosslet did not notice any defects associated with the shopping cart. (ECF No. 21-1 at 3). While completing her

---

[1] This case was previously assigned to then-Chief Magistrate Judge Paul W. Grimm with the consent of the parties for all proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c). (ECF Nos. 9 & 11). On December 20, 2012, after Judge Grimm's confirmation as a United States District Judge, this case was reassigned to me.

[2] The Court has considered the following submissions: Defendant's Motion for Summary Judgment (ECF No. 21), Plaintiff's Response in Opposition (ECF No. 24) and Defendant's Reply (ECF No. 25).

purchase at the store's register area, Ms. Bosslet loaded a package onto the bottom shelf of her shopping cart and thereafter fell to the ground. (ECF No. 24 at 1-2). Ms. Bosslet claims that as she placed a package of toilet tissue onto the bottom shelf of the grocery cart "the bottom shelf . . . swung forward" and "startled her." (ECF No. 2 at 1-2). Thereafter, Ms. Bosslet claims that her "right pants leg was caught in the shelf," and as she "was pushing the cart back, [she] didn't realize that [she] was also pushing" herself back. (ECF No. 21-1 at 2). This caused her to fall to the ground.

Wal-Mart disputes these facts. In support of its position, Wal-Mart submitted a video containing surveillance footage of Ms. Bosslet's fall. (ECF No. 25-1). The footage shows the following. At 5:49:07 Ms. Bosslet, wearing dark pants that fit close to her ankles, lifts the package of toilet tissue from the cashier's bagging area. At 5:49:08 she crouches down with the package and places it onto the bottom shelf of the shopping cart. At 5:49:09 she stands up, with her right foot farther away from the shopping cart. At 5:49:11 she walks around the side of the cart and falls onto her right side. Even though this footage is demonstrably inconsistent with Ms. Bosslet's sworn testimony, because this case is at the summary judgment stage the Court will resolve this dispute of fact in the light most favorable to Ms. Bosslet.

Wal-Mart has submitted evidence that the shopping cart Ms. Bosslet used was "a new shopping cart from a recent remodel" and that the shopping carts are inspected by Wal-Mart's cart pushers as the carts are gathered. (ECF No. 21-1 at 3). Wal-Mart's store manager testified that during his ten years as a Wal-Mart employee, he had "never had a basket problem . . . or a shelf problem" with a shopping cart. (ECF NO. 21-1 at 3). An assistant manager at Wal-Mart testified that the shopping carts are inspected for damage every day, and damaged shopping carts are taken out of service until they are repaired. (ECF No. 21-1 at 4).

### B. Procedural History

Ms. Bosslet filed her Complaint in the Circuit Court for Baltimore County, Maryland on December 9, 2011 (ECF No. 2), but did not serve a copy of the Summons and Complaint until July 30, 2012 (ECF No. 7). The Defendant removed the case to this Court on August 10, 2012 (ECF No. 1). Subject matter jurisdiction is based on diversity of citizenship pursuant to 28 U.S.C. § 1332. Ms. Bosslet resides in Virginia and Wal-Mart is a Delaware corporation with its principal place of business in Arkansas. The amount in controversy exceeds $75,000, exclusive of interest and costs. Pursuant to 28 U.S.C. § 1391, venue is proper in this Court as a substantial part of the events or omissions giving rise to the claim occurred in this district. Since this Court's jurisdiction is based on diversity of citizenship, the principles outlined in *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78 (1938) require the application of Maryland law to questions of substantive law.

The sole count of Ms. Bosslet's Complaint charges Wal-Mart with negligence in failing to maintain the shopping cart at issue "in a proper and safe operating condition," which resulted in the shopping cart being "defective, broken, in a state of disrepair, unsafe and dangerous, so as to endanger the life and limbs" of customers like Ms. Bosslet. (ECF No. 2 at 2). On December 17, 2008, at approximately 6:00 p.m., Ms. Bosslet alleges that

> solely as a result of the negligence and carelessness of [Wal-Mart] in permitting one of its shopping carts to be and continue in an irregular, defective and broken condition . . . the rack on the cart suddenly and without warning sprung backwards towards the Plaintiff, causing the Plaintiff to fall in and about the said Defendant's premises and [sustain injuries].

(ECF No. 2 at 1).

In its Motion for Summary Judgment, Wal-Mart asserts that there is no evidence to support Ms. Bosslet's claim that Wal-Mart was negligent or that any of its actions or omissions

3

caused Ms. Bosslet's injuries. (ECF No. 21-1 at 6). Specifically, Wal-Mart contends that Ms. Bosslet cannot show that Wal-Mart created or had actual or constructive notice of the shopping cart's defect that led to her injuries. (ECF No. 21-1 at 7-8) ("No evidence exists to establish that the Defendant[] had actual or constructive notice of any hazardous condition on its premises.") Ms. Bosslet's Response in Opposition to Wal-Mart's Motion relies on the theory of *res ipsa loquitur* and maintains that, under the circumstances of this case and with the lack of direct evidence of Wal-Mart's negligence, a jury should be permitted to infer that Wal-Mart's negligence was the cause of Ms. Bosslet's injuries. (ECF No. 24 at 3).

## II. LEGAL STANDARD

### A. Summary Judgment

Summary judgment is appropriate only when "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Dash v. Mayweather*, No. 12-1899, 2013 WL 5365967 (4th Cir. Sept. 26, 2013). The party moving for summary judgment bears the burden of demonstrating that no genuine dispute exists as to any material fact. *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). In reviewing a motion for summary judgment, the Court considers the evidence in the light most favorable to the non-moving party. *Ricci v. DeStafano*, 557 U.S. 557, 585 (2009).

If the moving party demonstrates that there is no evidence to support the non-moving party's case, the burden shifts to the non-moving party to identify specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). To satisfy this burden, the non-moving party "must produce competent evidence on each element of his or her claim." *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999). Although the Court "must draw all reasonable inferences in favor of the non-moving party," that

party "may not create a genuine issue of material fact through mere speculation, or building one inference upon another." *Id*. (citing *Anderson*, 477 U.S. at 255; *Runnenbaum v. NationsBank*, 123 F.3d 156, 163 (4th Cir. 1997); *Sylvia Dev. Corp. v. Calvert Cnty.*, 48 F.3d 810, 817–18 (4th Cir. 1995)). Indeed, the existence of only a "scintilla of evidence" is not enough to defeat summary judgment. *Anderson*, 477 U.S. at 251. Instead, the admissible evidentiary materials submitted must show facts from which the finder of fact could reasonably find in favor of the non-moving party. *Id*.

### B. Negligence and *Res Ipsa Loquitur*

Under Maryland law, a plaintiff must establish four elements to recover for negligence: "(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty." *Horridge v. St. Mary's Cnty. Dep't of Soc. Servs.*, 382 Md. 170, 182, 854 A.2d 1232 (2004). A business owes to its invitees "the duty to use ordinary care to have its premises in a reasonably safe condition." *Norris v. Ross Stores, Inc.*, 159 Md. App. 323, 335, 859 A.2d 266 (2004); *see also Rhaney v. Univ. of Maryland E. Shore*, 388 Md. 585, 602, 880 A.2d 357 (2005) ("Business invitees are visitors invited to enter the premises in connection with some business dealings with the possessor.")

In certain circumstances, a plaintiff may make a *prima facie* case of negligence by invoking the doctrine of *res ipsa loquitur*. *See Vito Sargis & Jones, Ltd.*, 108 Md. App. 408, 417, 672 A.2d 129 (1996). This doctrine permits a jury to infer a defendant's negligence as the cause of an accident, even where direct evidence of that negligence is lacking. *Norris*, 159 Md. App. at 329. R*es ipsa loquitur* does not require a jury to make an inference of negligence and does not

change the burden of proof in a negligence action. It does, however, operate to place on the defendant "the duty of going forward with the evidence to explain or rebut, if he can, the inference that he failed to use due care." *Munzert v. American Stores*, 232 Md. 97, 103, 192 A.2d 59 (1963). The three elements a plaintiff must establish to rely on the doctrine of *res ipsa loquitur*, discussed more fully below, are: "(1) A casualty of a sort which usually does not occur in the absence of negligence; (2) caused by an instrumentality within the defendant's exclusive control; (3) under circumstances indicating that the casualty did not result from the act or omission of the plaintiff." *Dover Elevator Co. v. Swann*, 334 Md. 231, 236-37, 638 A.2d 762, 765 (1994). "The central question involved in the use of the *res ipsa loquitur* doctrine is whether, by relying on common sense and experience, the incident more probably resulted from the defendant's negligence rather than from some other cause." *Norris*, 159 Md. App. at 331.

## III. DISCUSSION

The parties do not dispute the lack of direct evidence of Wal-Mart's negligence in this case.[3] Because of the lack of direct evidence of Wal-Mart's negligence, the facts viewed in the light most favorable to Ms. Bosslet are insufficient to sustain a traditional negligence claim against Wal-Mart. The sole issue before the Court is whether Ms. Bosslet may rely on the doctrine of *res ipsa loquitur* to make her *prima facie* case of negligence. As set forth below, Ms. Bosslet is unable to establish the three elements required to rely on the doctrine.

First, Ms. Bosslet fails to establish that there was "a casualty of a kind that does not ordinarily occur absent negligence." *Holzhauer v. Saks & Co.*, 346 Md. 328, 336, 697 A.2d 89,

---

[3] In Ms. Bosslet's opposition, she states that because Wal-Mart "failed to secure and keep the cart in question," she was "unable to make any direct inspection" of the cart. (ECF No. 24 at 3). Photos of the shopping cart are attached to Wal-Mart's Motion at ECF No. 21-4. The cart does not appear to have any defect, but because this case is at the summary judgment stage, the Court will view the defectiveness of the cart in the light most favorable to Ms. Bosslet.

6

93 (1997) (stating that *res ipsa loquitur* "does not apply where it can be said from ordinary experience that the accident might have happened without the fault of the defendant"). In the light most favorable to Ms. Bosslet, the facts show that she was startled by her shopping cart's lower shelf, which caused her to fall. A customer falling in a retail store is unlike other cases where plaintiffs have been permitted to rely on *res ipsa loquitur*. Although there is understandably no uniformity in the fact patterns that give rise to reliance on the doctrine, the accidents usually involve an object that is not in plaintiff's control falling on, collapsing under, or exploding nearby a plaintiff. *See Holzhauer*, 346 Md. at 338-39 (citing examples of accidents "of such a character as to justify a jury in inferring negligence as the cause of that accident," such as barrels of flour falling from the sky onto pedestrians, stairs collapsing under a person's feet, and bricks falling from chimneys onto children below); *see also Gillespie v. Ruby Tuesday, Inc.*, 861 F. Supp. 2d 637, 644 (D. Md. 2012) (permitting the application *res ipsa loquitur* where a lamp hanging above a customer's table in a restaurant fell onto the customer). When such accidents happen, it can be difficult for a plaintiff to explain, let alone prove, the cause of the accident. This is especially true when the cause of the accident is an object in the exclusive control of another. Here, depending on which account of Ms. Bosslet's is believed, she either was startled by the shopping cart's broken lower shelf and fell, or caught her pants leg in the shopping cart and fell. The Court is not convinced that either of these scenarios involve the kind of casualties that ordinarily would not occur absent negligence. Ms. Bosslet argues that if Wal-Mart had properly maintained the bottom shelf of the shopping cart, it would not have startled her and she would not have fallen. Shopping carts are not particularly perilous instrumentalities and there is little a retailer can be expected to do to prevent customers from tripping on or near their shopping carts. *See Chesapeake & Potomac Tel. Co. of Maryland v. Hicks*, 25 Md. App.

7

503, 522, 337 A.2d 744, 755 (1975) ("[W]hen an appliance or machine not obviously dangerous, has been in daily use for a long time, and has uniformly proved adequate and safe, its use may be continued without imputation of negligence."). Ms. Bosslet's fall was the result of being startled by or tangled up within Wal-Mart's shopping cart and is not the sort of casualty that ordinarily would not occur in the absence of negligence.

Second, Ms. Bosslet fails to show that the shopping cart was an "instrumentality within the exclusive control" of Wal-Mart. Ms. Bosslet testified that she obtained the shopping cart when she first entered the store and used it for about an hour without incident. (ECF No. 21-12 at 2). When she began using the shopping cart, "it was with all the other carts." (ECF No. 21-2 at 6). That Ms. Bosslet had possession of the shopping cart for approximately one hour immediately preceding her fall is alone sufficient to show that Wal-Mart did not have "exclusive control" of the shopping cart. Under scenarios far less clear, courts have held that a retail store did not have exclusive control over certain instrumentalities that caused accidents.

In *Curry v. J.C. Penney Corp., Inc.*, Case No. WGC-09-830, 2010 WL 972430 (D. Md. Mar. 12, 2010), the court found that a J.C. Penney store did not have exclusive control over a cookware box that fell on a plaintiff, because other customers had access to the shelf on which it was located before it fell. *Id*. at *9 ("The photographs of the shelf do not show any physical barrier shielding merchandise [that would prevent] customers from reaching for, removing or adjusting merchandise. The facts need not show that another customer [disturbed the cookware box] to preclude reliance on *res ipsa*; they need only show that something other than J.C. Penney's was just as likely to cause the cookware box to fall off the shelf.").

In *Holzhauer*, upon certification to Maryland's Court of Appeals, the court held that a plaintiff injured when a department store's escalator came to a sudden stop could not show that

8

the store was in exclusive control of the escalator. 346 Md. at 338. The court reasoned that "hundreds of [the store's] customers have unlimited access to the emergency stop buttons [on the escalator] each day. If the escalator's two emergency stop buttons are readily accessible to all persons in the vicinity and any customer can cause the escalator to stop simply by pressing one of the buttons, then it is impossible to establish that the escalator was in [the store's] exclusive control." 346 Md. at 337. *See also Byrd v. Wal-Mart Stores, Inc.*, 203 F.3d 819 (4th Cir. 2009) (table) (holding that store did not have exclusive control of boxes of merchandise that fell from shelf because plaintiff "failed to negate the hypothesis of an intervening cause beyond the defendant's control"); *Williams v. McCrory Stores Corp.*, 203 Md. 598, 604-05 (1954) (holding that defendant did not have exclusive control of revolving stools because thousands of customers had access to the stools each week); *Smith v. Kelly*, 246 Md. 640 (1967) (holding defendant's control not exclusive where other customers had access to self-service washing machines).

Both parties cite to *Norris*. 159 Md. App. 323. There, a shelving unit in a retail store collapsed, causing injuries to the plaintiff. The court found that the store had exclusive control over the shelving unit. There was no evidence that any customer had interfered with the shelving unit, but there was evidence that the shelving unit had recently been assembled by the store. Common sense suggests that certain items within a store, such as boxes of merchandise and shopping carts, are routinely moved and disturbed by customers. A store's shelving units, however, are not so routinely disturbed, and as *Norris* stated, a store has a duty to ensure that the shelving units are secure and do not collapse on their customers. While the Court accepts Ms. Bosslet's argument that the shopping cart "is an instrumentality of the Defendant, and the Defendant is responsible for keeping it in a safe and proper condition," this does not mean that the shopping cart was within Wal-Mart's exclusive control. The undisputed evidence is that the

9

shopping cart was retrieved from a shopping cart corral after any number of customers may have already used it, and was used by Ms. Bosslet herself for approximately one hour without incident. Like the merchandise boxes in *Curry* and the escalator switch in *Holzhauer*, Wal-Mart did not have exclusive control over the shopping cart that Ms. Bosslet used.

Third, Ms. Bosslet cannot establish that her fall was not the result of her own acts or omissions. Ms. Bosslet argues that this element must be resolved in her favor "because it is a factual issue as to whether any intervening act by the Plaintiff caused the rack to spring back towards her." (ECF No. 24 at 8). This argument ignores the undisputed fact that she used the cart for an hour without incident before her fall. In addition, there is no dispute that Ms. Bosslet loaded an object onto the bottom of the cart, after which time she became startled and fell to the ground. Her fall was the result of her own act, and not the cart toppling her over on its own. The facts in this case are far removed from the facts in cases where *res ipsa loquitur* has been applied. As stated above, the doctrine is usually applied in cases where an unforeseen force acts to injure a plaintiff. In this case, the cause of Ms. Bosslet's injury was her reaction to her stationary shopping cart. *See Bell v. May Dept. Stores Co.*, 866 F.2d 452 (D. D.C. 1989) (noting that "one cannot rely on *res ipsa loquitur* if causes other than the defendant's negligence might just as well have produced the accident"); *see also Smith v. Bernfeld*, 226 Md. 400 (1961) ("When a business man uses a customary appliance . . . negligence merely from using that appliance is not lightly to be imputed, for the custom goes a long way to show that it is reasonably prudent to use it."). Here, Ms. Bosslet's own conduct "weakens the probability that the injury is attributable to the defendant's act or omission." *Joffre v. Canada Dry Ginger Ale, Inc.*, 222 Md. 1, 9, 158 A.2d 631, 635 (1960).

## IV. CONCLUSION

Ms. Bosslet may not rely on the doctrine of *res ipsa loquitur* to allow a jury to infer that Wal-Mart breached the duty it owed to her as its invitee, and that the breach was the cause of her injuries. Because Ms. Bosslet cannot rely on this inference, and has presented no direct evidence to establish that Wal-Mart breached any duty it owed to her, or that such breach was the cause of her injuries, Wal-Mart is entitled to judgment as a matter of law. Wal-Mart's Motion for Summary Judgment (ECF No. 21) is GRANTED. An Order implementing this decision and closing the case will be filed separately.

Date:   October 25, 2013                            /s/
                                                    Timothy J. Sullivan
                                                    United States Magistrate Judge